

**FILED**

**JUNE 6, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:15 AM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Yonics Alexis Enriquez Sanchez, | ) | **Docket No.: 2016-01-0218** |
| Employee, | ) | |
| v. | ) | **State File No.: 31598-2015** |
| Oz Construction Co., | ) | |
| Employer, | ) | **Judge Thomas Wyatt** |
| And | ) | |
| | ) | |
| Acuity Ins. Co., | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR TEMPORARY TOTAL DISABILITY BENEFITS

This case came before the undersigned Workers' Compensation Judge on May 19, 2016, upon the Request for Expedited Hearing filed by the employee, Yonics Alexis Enriquez Sanchez, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The hearing focused on whether is entitled to an award of temporary disability benefits for the period between April 1, 2015, and December 15, 2015. For the reasons set forth below, the Court finds Mr. Sanchez is entitled to temporary total disability benefits from April 1, 2015, until May 19, 2015..[1]

### History of Claim

Mr. Sanchez is a twenty-four-year-old resident of Hamilton County, Tennessee. (T.R. 1 at 1.)   On the date of injury, he was a Mexican citizen working without documentation. (Ex. 7 at 1.)   On November 17, 2014, Mr. Sanchez worked on a framing crew for Oz Construction Company in the erection of a multi-unit housing complex near downtown Chattanooga.   He was framing on the third floor of the partially-erected structure when a high wind caused it to collapse. Mr. Sanchez fell to the ground with the collapsing structure, coming to rest pinned beneath the roof of the fallen

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

structure with his left leg bent under his body. Mr. Sanchez suffered severe damage to his left knee.

Osvaldo Nunez, the owner of Oz Construction, initially handled Mr. Sanchez's injury without reporting it to his workers' compensation carrier.[2] Mr. Sanchez testified that, beginning November 25, 2014 (Ex. 8 at 42), Mr. Nunez took him for treatment of his knee to Dr. Benjamin S. Miller, an orthopedic surgeon. Even though he could not work due to his left-knee injury, Mr. Nunez personally paid Mr. Sanchez differing weekly amounts, totaling $3,850 (Ex. 4), during the three months following the injury. Mr. Sanchez used some of this money to pay for Dr. Miller's treatment. Dr. Miller did not know Mr. Sanchez was a workers' compensation patient until more than five months after Mr. Sanchez came under Dr. Miller's care. (Ex. 6 at 16, 18.)

During the first treatment visit, Dr. Miller injected Mr. Sanchez's left knee and ordered an MRI, which revealed a subluxation of the knee joint, a dislocated patella, and tears in the medical collateral and posterior collateral ligaments. *Id.* at 36, 40. All injuries but the torn posterior collateral ligament healed with conservative therapy. *Id.* at 26-7. On April 1, 2015, Dr. Miller surgically repaired the torn left posterior collateral ligament. *Id.* at 22.

Mr. Sanchez testified Dr. Miller confined him to physical therapy and bedrest for approximately three months following the surgery. He stated he tried to return to work at a restaurant in October 2015, but, after only four days, left this position because it caused pain and swelling in his left knee. Mr. Sanchez testified he returned to full-time restaurant work on December 15, 2015, when his left knee had more fully healed.

Mr. Sanchez stated during the Expedited Hearing his only income from April 1, 2015, the date of surgery, until December 15, 2015, the date he began full-time restaurant work,[3] consisted of his pay for the four days of restaurant work in October 2015, and two $300 workers' compensation checks from Acuity Ins. Co. Mr. Sanchez testified his knee injury precluded him from working all but three or four days during the above-stated period. He seeks temporary disability benefits at the rate of $310.22 per week.[4]

Oz Construction contended Mr. Sanchez did not establish entitlement to temporary disability benefits. It argued Mr. Sanchez's credibility is suspect because of his status as an illegal immigrant and, further, because Dr. Miller's records indicate he worked extensively during the alleged period of disability.

---

[2] The carrier, Acuity Ins. Co., did not receive notice of this injury until July 31, 2015. (Ex. 3 at 1.)

[3] Mr. Sanchez limited his claim to temporary disability benefits to this time period.

[4] The parties stipulated this amount to be Mr. Sanchez's compensation rate.

**Findings of Fact and Conclusions of Law**

Mr. Sanchez bears the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). He need not, however, prove every element of his claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he has the burden to come forward with sufficient evidence from which the Court can determine that he is likely to prevail at a hearing on the merits.

Mr. Sanchez seeks temporary disability benefits in this Expedited Hearing. The foundational legal authority on the establishment of temporary disability benefits is found in *Jones v. Crencor Leasing and Sales*, No. 2015-01-0332, 2015 TN Wrk. Comp. Bd. LEXIS 48, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), in which the Tennessee Workers' Compensation Appeals Board, citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978), held, "[a]n injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability."

In this claim, Oz Construction does not seriously dispute that Mr. Sanchez suffered a compensable left-knee injury that disabled him during a period of time after its occurrence. The determinative issue here involves the third prong of the test set forth above in the quoted language from the *Jones* opinion—the period during which Mr. Sanchez temporarily suffered disability due to his left-knee injury. Stated more specifically, the Court must decide whether Mr. Sanchez worked more than he testified he did during the claimed compensation period, April 1, 2015, to December 15, 2015.

In making its determination, the Court notes Mr. Sanchez's testimony that he only worked four days at a restaurant during the claimed eight and one-half month compensation period. Against this testimony, the Court considers the information contained in Dr. Miller's records regarding Mr. Sanchez's work status.[5] In comparing Mr. Sanchez's testimony with the information in the records, the Court recognizes the

---

[5] The Court will not, as advocated by Oz Construction, impugn Mr. Sanchez's credibility because he was an undocumented worker when injured. The Tennessee Workers' Compensation Law provides all benefits except enhanced disability benefits to undocumented workers who suffer injuries that arise primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-207(3)(F) (2015). The Court finds it inconsistent with the public policy of the Workers' Compensation Law to discredit an injured worker's testimony merely because he or she falls within a status that the Law itself considers insufficient to deny benefits to the worker.

fact that, during his deposition, Dr. Miller conceded he does not personally obtain and record some of the information contained in his records, but relies on his assistants to do so. (Ex. 6 at 25.) However, Dr. Miller testified his medical training emphasized the importance of obtaining and maintaining in his treatment records accurate information from patients, *Id.* at 15, and further averred he does not believe his assistants simply carry over information from visit-to-visit. *Id.* at 25. Although Mr. Sanchez's counsel pointed out discrepancies in the factual data contained in Dr. Miller's records,[6] the Court finds no compelling reason to question the accuracy of the information in the records regarding Mr. Sanchez's work status.

In the first post-operative visit on April 3, 2015, Dr. Miller's note recorded that Mr. Sanchez was not working. (Ex. 8 at 23.) Identical notations appeared in the April 17, 2015, and May 1, 2015 notes. *Id.* at 19-21. Dr. Miller's May 19, 2015 note, however, indicates Mr. Sanchez had returned to modified duty and was "not really having any pain at all." *Id.* at 17. Based on the above-described records, the Court finds Mr. Sanchez established that, at a hearing on the merits, he will likely prevail in proving his entitlement to temporary total disability benefits from April 1, 2015, until May 19, 2015.

Beginning with the May 19 treatment note, Dr. Miller's records and Mr. Sanchez's testimony differ significantly regarding his work status. Dr. Miller's June 16, 2015 and July 14, 2015 records document continuation of Mr. Sanchez's modified-duty status. (Ex. 8 at 12, 15.) The earlier note contains Dr. Miller's opinion Mr. Sanchez could not return to construction work, but could try restaurant work. *Id.* at 15. While the August 18, 2015 note indicates Mr. Sanchez was not working at all, it also records, "[h]e is back to work." *Id.* at 11. Dr. Miller's September 10, 2015 note indicates Mr. Sanchez is doing better and is working full-time at a restaurant. *Id.* at 7. The same notation appears in Dr. Miller's October 16, 2015 note. *Id.* at 5.

When considering the totality of the evidence, the Court identifies numerous discrepancies between the work status information in Dr. Miller's records and Mr. Sanchez's testimony that he only worked four days between April 1, 2015, and December 15, 2015. Accordingly, the Court finds Mr. Sanchez has not, at this time, come forward with sufficient information to show he would prevail at a hearing on the merits that he is entitled to temporary disability benefits from May 20, 2015, until December 15, 2015. The Court thusly denies Mr. Sanchez's claim for temporary disability benefits after May 19, 2015.

---

[6] Counsel pointed out discrepancies in the information recorded about Mr. Sanchez's smoking history, age and gender. (Ex. 6 at 25-27.)

**IT IS, THEREFORE, ORDERED** as follows:

1.  Mr. Sanchez is awarded temporary total disability benefits at the weekly compensation rate of $310.22 from April 1, 2015, until May 19, 2015, a period of seven weeks and six days, or $ 2,435.23. Oz Construction may deduct the $600 in temporary disability benefits it previously paid, thus the net award here is $1,835.23.

2.  Mr. Sanchez's claim for temporary total or temporary partial disability benefits from May 20, 2015, until December 15, 2015, is denied at this time.

3.  This matter is set for an Initial (Scheduling) Hearing on July 29, 2016, at 10:00 a.m. Eastern Time.

**ENTERED this the 6th day of June, 2016.**

**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-741-3061 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order Denying to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>

1. Affidavit of Yonics Alexis Enriquez Sanchez;
2. Responses of Oz Construction and Acuity Ins. Co. to Benefit Review Conference Employer Standard Discovery Form;
3. First Report of Injury;
4. Wage Statement;
5. Final Medical Report of Dr. Benjamin S. Miller;
6. Transcript of the Deposition of Dr. Benjamin S. Miller;
7. Discovery Responses of Yonics Alexis Enriquez Sanchez; and
8. Exhibits to the Deposition of Dr. Benjamin S. Miller, including Dr. Miller's Curriculum Vitae and Dr. Miller's treatment notes.

<u>Technical record:</u>[7]

1. Petition for Benefit Determination, filed March 30, 2016;
2. Dispute Certification Notice, filed April 21, 2016;
3. Request for Expedited Hearing, filed May 3, 2016;
4. Notice of Expedited Hearing, filed May 10, 2016; and
5. Employer's Response to Employee's Request for Expedited Hearing, filed May 10, 2016.

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the expedited hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 6th day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Marc Walwyn, Attorney for Employee | | | X | marc@walwynlaw.com; |
| David Hatfield, Attorney for Employer | | | X | dhatfield@dmrpclaw.com |

_Penny Shrum_, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**